OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Ronald F. Cuthbert, from a judgment of the Franklin County Court of Common Pleas, granting a directed verdict in favor of defendants-appellees, Trucklease Corporation, dba AMI Leasing, Kris A. Foster and David L. Bartholow, on appellant's claims for breach of contract, promissory estoppel, reformation, negligence, negligent misrepresentation, and negligent supervision and training.
 {¶ 2} Appellant commenced this action seeking to establish insurance coverage arising out of a truck lease/rental agreement. Although some of the facts surrounding the issuance of the rental agreement are in dispute, the following background facts are primarily undisputed, unless otherwise noted.
 {¶ 3} Appellant is the former president of Cuthbert Greenhouse, a business he operated with his two brothers. Cuthbert Greenhouse routinely rented trucks for its business, and had an ongoing business relationship with appellee, Trucklease Corporation ("Trucklease"), a truck rental and leasing company.
 {¶ 4} Before renting trucks to a customer, Trucklease requires renters to either provide their own insurance or to accept insurance Trucklease procures for its customers through Hanover Insurance Company ("Hanover"); Trucklease has two different forms for renters to fill out, depending on which option the renter chooses. For renters providing their own insurance, Trucklease requires that they obtain a certificate of insurance naming Trucklease as an additional insured and loss payee; such renters must also carry liability insurance with a minimum of $1,000,000 combined single limit for each occurrence.
 {¶ 5} For renters without a certificate of insurance on file, Trucklease extends its coverage from Hanover to its rental customers as additional insureds based upon a fee for liability and physical damage. Pursuant to paragraph 9 of the rental agreement, such coverage "shall be equal to statutory insurance limits required by the state in which the Vehicle is rented so far as public liability and property damage coverage is concerned." A renter obtaining coverage through Trucklease must also complete a liability addendum, including questions regarding the renter's driving record for the past three years.
 {¶ 6} A renter is also given the option to elect or decline "loss damage waiver" protection. The effect of a renter accepting loss damage waiver, in exchange for an additional fee, is to reduce (or "buy down") the renter's deductible in the event of physical loss or damage to the rental vehicle.
 {¶ 7} When renting trucks from Trucklease, Cuthbert Greenhouse did not utilize coverage procured by the rental company but, instead, was insured through its own insurance companies for $1,000,000 per accident. Appellant, however, was excluded from his company's insurance policy after accumulating a number of speeding tickets, therefore making it necessary for him to rent trucks in his own name and to obtain other insurance on the trucks.
 {¶ 8} On April 27, 1999, appellant needed a truck for a delivery in Indiana and went to Trucklease's rental business and spoke with one of Trucklease's rental managers, Kris Foster, about leasing a truck. Foster prepared a contract that appellant eventually signed, admitted at trial as Plaintiff's Exhibit No. 1. On the front of the form, appellant initialed a paragraph stating: "Renter to provide physical loss and damage insurance. Renter to pay total cost of loss or damage to vehicle and other related costs as specified in paragraph 7." Appellant testified that he did not read that paragraph prior to signing it. Appellant also initialed a paragraph stating: "Renter to provide liability insurance as specified in paragraph 11." Appellant stated he did not read that paragraph, nor did he look at any of the terms and conditions on the back of the contract. Appellant also initialed the loss damage waiver line, indicating on that particular form that he was declining loss damage waiver.
 {¶ 9} Appellant testified, however, that he informed Foster that he "needed insurance." (Tr. 52.) Specifically, before leaving the rental office, appellant noticed that the rental agreement did not provide insurance coverage, and he said to Foster, "you don't have any coverage for insurance. And I said, do we have to redo this form to get this form right?" (Tr. 56.) Foster indicated he would have to speak with his manager in the back office. Shortly thereafter, Foster's manager came out of the office, and appellant was told to draw a line through his initials on the loss damage waiver line, and to initial the change.
 {¶ 10} According to appellant, he assumed that Trucklease would provide coverage in the amount of $1,000,000 per accident because such coverage would be similar to what Trucklease required of its rental customers who furnish their own insurance. He further testified that neither Foster nor his manager informed him that insurance procured through Trucklease would be limited to state minimum insurance requirements. Appellant stated he would not have driven the truck if he had been aware of the limitation on coverage.
 {¶ 11} Kris Foster testified that, when he spoke with appellant on April 27, 1999, he did not remember appellant using the term "insurance," but, at some point during their conversation, appellant indicated he had a problem with the rental form. Foster recalled that appellant "pointed to [the] loss damage waiver section and said that I want that." (Tr. 229.) At the time, Foster was unclear as to why appellant wanted loss damage waiver since his company had a certificate of insurance on file. Foster spoke with his manager, David Bartholow, about the fact that appellant had initialed the loss damage wavier line (declining that protection). Bartholow told Foster to "mark it out because it wasn't relevant because we had a certificate from Cuthbert Greenhouse." (Tr. 223.) Foster subsequently told appellant to "cross out his initials and then to initial it." (Tr. 226.) When questioned on cross-examination about his prior deposition testimony, Foster acknowledged that it was his understanding that appellant, by accepting loss damage waiver, wanted insurance through Trucklease.
 {¶ 12} Bartholow, appellee's district rental manager, recalled Foster coming into his office that day and pointing to the loss damage waiver line where appellant had initially put his initials. Bartholow told Foster "it was not relevant because they were providing their own insurance coverage" and, therefore, Bartholow instructed Foster to draw a line through that portion of the contract. (Tr. 182.) According to Bartholow, Foster did not indicate to him that appellant wanted to obtain insurance through Trucklease.
 {¶ 13} Later that day, while driving the rental truck in Indiana, appellant was involved in an accident with another vehicle. Two days later, on April 29, 1999, appellant met with representatives of Trucklease and was asked to fill out the Trucklease form used in transactions in which insurance is procured through Trucklease. Appellant assumed he was asked to sign the document to straighten out the paperwork since there had been an accident. Appellant subsequently learned from Trucklease that coverage would not be provided based upon appellant's failure to correctly state, when he filled out the second form on April 29, 1999, the number of moving traffic violations he had incurred the previous three years.
 {¶ 14} The driver of the vehicle involved in the accident in Indiana subsequently filed suit in federal court against appellant, Cuthbert Greenhouse, Inc., Cuthbert Greenhouse, Co., and Cuthbert Properties, Ltd. Appellant filed an offer of judgment for $750,000, and the injured driver filed an acceptance of that offer of judgment.
 {¶ 15} On November 6, 2001, appellant filed his complaint in the underlying action, alleging causes of action for breach of contract, promissory estoppel, fraud and negligent misrepresentation. The trial court subsequently granted appellant leave to file an amended complaint, and appellant added causes of action for negligence, vicarious liability, negligent training and supervision and reformation of the rental agreement.
 {¶ 16} The matter came for trial before a jury beginning on May 30, 2003, and appellant proceeded under theories of breach of contract, promissory estoppel, reformation of contract, negligence, negligent misrepresentation and negligent supervision and training. At the close of appellant's case, Trucklease moved for a directed verdict on all of appellant's claims, and the trial court granted the motion. On May 30, 2003, the trial court filed a decision and judgment entry.
 {¶ 17} On appeal, appellant sets forth the following six assignments of error for review:
Assignment of Error No. 1. The trial court committed reversible error by granting a directed verdict on plaintiff's/appellant's claims for breach of contract.
Assignment of Error No. 2. The trial court committed reversible error by granting a directed verdict on plaintiff's/appellant's claim for reformation.
Assignment of Error No. 3. The trial court committed reversible error by granting a directed verdict on plaintiff's/appellant's claim for promissory estoppel.
Assignment of Error No. 4. The trial court committed reversible error by granting a directed verdict on plaintiff's/appellant's claim for negligent misrepresentation.
Assignment of Error No. 5. The trial court committed reversible error by granting a directed verdict on plaintiff's/appellant's claim for negligence.
Assignment of Error No. 6. The trial court committed reversible error by granting a directed verdict on plaintiff's/appellant's claim for negligent training/supervision.
 {¶ 18} Under each of his six assignments of error, appellant raises the general contention that the trial court erred in granting Trucklease's motion for directed verdict. In Estate ofCowling v. Estate of Cowling, Lorain App. No. 01CA007944, 2004-Ohio-2665, at ¶ 17-18, the court noted the standard of review for an appellate court from a trial court's grant or denial of a motion for directed verdict, stating as follows:
* * * Whether a trial court properly granted or denied a motion for directed verdict presents a question of law, which we review de novo. * * * Civ.R. 50(A)(4) provides:
"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. * * * In ruling on a motion for a directed verdict, the trial court must construe the evidence most strongly in favor of the non-moving party. * * * When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. * * * However, where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. * * *
 {¶ 19} Appellant's first, second and third assignments of error are somewhat interrelated and will be addressed together. Under the first assignment of error, appellant argues there was substantial evidence by which a reasonable trier of fact could find that he entered into an oral agreement with Trucklease for both the rental of a truck and for insurance coverage. Appellant contends the written rental form he signed on April 27, 1999, reflects the terms of this oral agreement but that, because of material differences between the rental form and the intentions of the parties, the form does not constitute the actual
agreement of the parties. In an attempt to look beyond the signed agreement, appellant argues that the rental agreement contains various ambiguities and, therefore, the agreement must be read in pari materia with parol evidence as to the parties' intent. Appellant further asserts that the trial court, in finding that appellant sought an oral modification of a written contract, misconstrued his theory of recovery.
 {¶ 20} A review of the trial court's decision indicates that the court recognized that appellant's theory at trial was breach of an oral agreement, but the court found no evidence that the parties agreed to the issuance of insurance, or as to the amount of any insurance. The court held that "[t]he only document or oral agreement that could possibly be enforced would be the original April 27, 1999 written document * * * which declines insurance coverage."
 {¶ 21} The purpose of contract construction is to give effect to the intention of the parties, and such intent "is presumed to reside in the language they chose to employ in the agreement."Stoll v. United Magazine Co., Franklin App. No. 03AP-752, 2004-Ohio-2523, at ¶ 7. The question of whether a contract is ambiguous is a question of law, subject to a de novo standard of review. Id. A court is not required to go beyond the plain language of an agreement to determine the parties' rights and obligations if a contract is clear and unambiguous. CustomDesign Tech., Inc. v. Galt Alloys, Inc. (Jan. 7, 2002), Stark App. No. 2001CA00153. Further, "`common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument.'" Id., quoting Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 245-246.
 {¶ 22} In general, the parol evidence rule prohibits the introduction of a prior or contemporaneous oral statement to vary the terms of a written agreement. Children's House EarlyLearning Ctr., Inc. v. McNamara, Cuyahoga App. No. 83300, 2004-Ohio-1904, at ¶ 9. However, parol evidence is admissible for some purposes where a contract is ambiguous. Lapp v. Anzells
(Aug. 19, 1999), Cuyahoga App. No. 74487.
 {¶ 23} In support of his contention that certain provisions of the writing are ambiguous and contradictory, appellant first notes that the "renter" box on the agreement was left blank, therefore leaving the agreement ambiguous as to the renter. We note, however, there is no dispute in this case that appellant was the renter. Further, paragraph 1(b) provides: "Renter means the individual signing this Agreement." Because appellant signed the rental agreement, he is the "renter," and we find no ambiguity based upon the above language.
 {¶ 24} Appellant's next claim of ambiguity is predicated upon the "loss damage waiver" (hereafter "LDW") provision. As indicated under the facts, Trucklease has two different forms for customers depending upon whether they provide their own insurance or accept insurance obtained through Trucklease. Both forms, however, contain a blank "Loss Damage Waiver" line, allowing the renter to indicate whether he or she is accepting or declining LDW. Pursuant to paragraph 6 of the rental agreement, in the event a renter accepts LDW (and thereby agrees to pay an additional fee), the "Owner" (Trucklease) agrees to waive the renter's responsibility for any physical loss or damage to the rental truck in excess of the deductible amount listed on the face of the agreement. Thus, as previously noted, the effect of a renter accepting LDW protection (which is not insurance) is to reduce the renter's deductible in the event of an accident.[1]
 {¶ 25} Appellant maintains that an ambiguity exists because a renter's acceptance of LDW is necessarily inconsistent with a renter providing his or her own insurance. Presumably, however, it would not be inconsistent for a renter to maintain his or her own liability insurance, but to accept LDW for physical damage protection through Trucklease.
 {¶ 26} Appellant also contends, without elaboration, that paragraphs 8 and 11 on the reverse side of the rental agreement contain conflicting provisions. Both paragraphs appear under the heading "public liability and property damage responsibility." Paragraph 8 states in part: "Renter, being an assured under the public liability insurance policy covering the Vehicle, agrees to be subject to all the terms and conditions of said policy." Paragraph 11 provides in part: "In the event Renter by endorsement on the face hereof agrees to procure and maintain the insurance then, Renter agrees to provide automobile liability insurance with Owner as a named assured, against all risks of loss or damage to persons or property."
 {¶ 27} Assuming appellant's argument to be that paragraph 8 necessarily guarantees coverage, we disagree; rather, when considering paragraphs 8 and 11 in conjunction with the provision on the front of the form, containing a box for a renter to mark if providing liability insurance "as specified in paragraph 11," a renter who agrees to be responsible for procuring liability insurance would not be an "assured." Although not dispositive, we further note that appellant's own expert, John Fitzgerald, testified that nothing on the form at issue could be interpreted as a promise by appellee to insure the renter.
 {¶ 28} Upon review, we find no ambiguity to be resolved regarding the written agreement signed by the parties, and we therefore find unpersuasive appellant's contention that the rental agreement must be read in pari materia with extrinsic evidence to establish the parties' intent or to alter the terms of the written agreement. Accordingly, we find that the trial court did not err in granting a directed verdict as to appellant's claim for breach of an oral agreement.
 {¶ 29} We similarly find that the trial court did not err in granting a directed verdict as to appellant's claim for promissory estoppel. Under Ohio law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Talley v. TeamstersLocal No. 377 (1976), 48 Ohio St.2d 142, 146. The elements of promissory estoppel are: "(1) a clear, unambiguous promise; (2) reasonable and foreseeable reliance upon the promise by the person to whom the promise is made; and (3) resulting injury to the party who relied on the promise." Stickler v. Keycorp,
Cuyahoga App. No. 80727, 2003-Ohio-283, at ¶ 20. Furthermore, "[p]romissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." Borowski v. State Chem. Mfg. Co. (1994),97 Ohio App.3d 635, 643.
 {¶ 30} As discussed above, in the present case, there was an unambiguous, written agreement, purporting to delineate the obligations of both parties. Under these circumstances, we conclude that such agreement precludes the use of promissory estoppel to add any oral terms. See Lippert v. Univ. ofCincinnati (Oct. 3, 1996), Franklin App. No. 96API03-349 (oral agreement on which promissory estoppel claim is based cannot be used to alter unambiguous written contract); Ed Schory Sons,Inc. v. Soc. Natl. Bank (1996), 75 Ohio St.3d 433, 440.
 {¶ 31} We next turn to appellant's contention that the trial court erred in granting appellee's motion for a directed verdict as to his reformation claim. Appellant maintains there was evidence presented upon which a reasonable person could find a mutual mistake between the parties. Appellant argues that, while it is difficult to characterize the nature of the mistake, there was evidence of a mutual mistake as to both the existence of insurance coverage and as to the amount of insurance coverage provided by Trucklease.
 {¶ 32} The trial court rejected appellant's reformation argument on the basis that there was no evidence of a mutual mistake. The court also cited appellant's failure to read the terms of the written agreement before signing as precluding reformation of the agreement.
 {¶ 33} Ohio courts recognize that "[r]eformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties." Mason v. Swartz (1991),76 Ohio App.3d 43, 50. Reformation can be used to remedy a mutual mistake but not a unilateral one. Anzells, supra. Thus, "Ohio law regarding mutual mistake in the formation of a contract requires that the contract provision in question be contrary to the understanding of all of the contracting parties," and reformation "is allowed only where there is clear proof that the parties made the same mistake and that both parties understood the contract as the party seeking reformation alleges." Id. Further, "[t]he party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence." Id.
 {¶ 34} Although we have determined that the signed rental agreement is unambiguous, a contract need not be ambiguous in order to be reformed. Rosen v. Westinghouse Elec. Supply Co.
(C.A. 8, 1957), 240 F.2d 488, 491 ("it is not necessary, as a prerequisite to the reformation of an instrument to conform to the intention of the parties, that the instrument on its face be ambiguous). Nor does the prohibition against parol evidence to vary the terms of a written contract prevent proof as to mutual mistake. Williams Trucking, Inc. v. Gable (June 8, 2000), Cuyahoga App. No. 75614 (because the purpose of reformation is to cause an instrument to express the intent of the parties, such intention can be discovered through parol evidence of the parties' mutual intent).
 {¶ 35} As noted above, the trial court determined that appellant failed to show evidence of mutual mistake, and that appellant's failure to carefully read the agreement prior to signing it precluded his reformation claim. However, "it is not essential that the party seeking the reformation of a contract show that he is wholly free from fault." Crout v. D.E.R. Bldg.Co. (Nov. 13, 2001), Brown App. No. CA2000-12-039. Ohio courts have cited with approval the Restatement of Contracts for the proposition that "`a party's negligence does not necessarily preclude equitable relief.'" Haven House Manor, LTD v. Gabel,
Wood App. No. WD-02-073, 2002-Ohio-6750, at ¶ 16, quoting 1 Restatement of the Law 2d, Contracts (1981) 416, Mistake Section 157 ("`[a] mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith, and in accordance with reasonable standards of fair dealing'"). See, also, 7 Corbin on Contracts, Avoidance and Reformation (2002) § 28.45, 312 ("[t]he fact that one party was negligent in failing to observe that the writing does not express what the party has assented to does not undercut the availability" of reformation as a remedy).
 {¶ 36} Construing the evidence most strongly in favor of appellant, there was testimony presented that appellant informed appellee's employee, Foster, he wanted to obtain insurance through Trucklease on the rental vehicle, and that Foster's own understanding was that appellant wanted coverage. As previously noted, appellant testified that he told Foster he "needed insurance."
 {¶ 37} When questioned by appellant's counsel regarding his prior deposition testimony, Foster stated that it was his understanding at the time of the events that appellant wanted to obtain insurance based upon his expressed desire to accept LDW. Specifically, the record indicates the following exchange between counsel for appellant and Foster at trial:
Q. Once, again, I'm going to turn to your deposition transcript.
A. Okay.
Q. * * * And on that occasion I asked you:
"But as best as you can recall, Mr. Cuthbert's statement to you was that he wanted to accept the loss damage waiver?"
And your answer was: "Yes."
Then I said: "And your understanding of that was by accepting the loss damage waiver, he wanted insurance through AMI?"
Your answer was: "Yes."
So would that testimony be accurate?
At the time since it was a lot closer to the incident, yes.
So you understood that Mr. Cuthbert wanted to obtain insurance through AMI or Trucklease?
Yes.
(Tr. 229-230.)
 {¶ 38} While we make no determination as to whether reformation is mandated, based upon the testimony of appellant and Foster, there exists a factual issue as to whether the parties understood the rental agreement would include appellant as an insured and, therefore, whether it was a mutual mistake of appellant and Trucklease's employee that such coverage was not provided in the rental agreement signed.[2] We note that the trial court, while citing in its decision appellant's failure to carefully read the written agreement, did not specifically address Foster's testimony regarding his belief that appellant requested insurance. Keeping in mind our standard of review in considering the trial court's granting of a motion for directed verdict, although there was varying testimony as to whether Trucklease's employees understood appellant was seeking coverage, we cannot say, as a matter of law, that no reasonable trier of fact could find that a mutual mistake occurred based on the parties' intent that the rental agreement would include coverage for appellant.
 {¶ 39} However, regarding appellant's claim of a mutual mistake as to the amount of coverage, the evidence construed most strongly in favor of appellant reveals no discussions that Trucklease would provide coverage greater than the minimum statutory limits as set forth under paragraph 9. Appellant testified at trial that he assumed he was obtaining $1,000,000 per accident in coverage based upon his belief that Trucklease would provide coverage similar to what was required of its rental customers. Specifically, appellant "just assumed that that was the way business was done. I don't have anymore answer than that." (Tr. 60.)
 {¶ 40} Appellant's subjective belief that he would be covered in the same amount as what Trucklease required of renters providing their own insurance is not evidence as to a meeting of the minds, and there was no evidence that he communicated his subjective belief to Trucklease or its agents, or that they believed the rental agreement would provide policy limits higher than those clearly stated on the form. Rather, to the extent appellant asserts a mistake as to the amount of coverage, the only evidence presented was that such mistake was unilateral. Accordingly, while there remains an issue whether the rental agreement should be reformed to provide coverage, the evidence viewed in the light most favorable to appellant does not support an agreement to include coverage in an amount greater than would have been due under the policy limits set forth in Trucklease's standard form (i.e., coverage "equal to statutory insurance limits required by the state in which the Vehicle is rented").
 {¶ 41} Based upon the foregoing, appellant's first and second assignments or error are overruled, and the third assignment of error is sustained in part and overruled in part.
 {¶ 42} Appellant's fourth, fifth and sixth assignments of error are interrelated and will be considered together. Under these assignments of error, appellant contends the trial court erred in granting a directed verdict as to his claims for negligent misrepresentation, negligence and negligent training/supervision.
 {¶ 43} At the outset, we note that appellant, both before the trial court and on appeal, has attempted to characterize his relationship with Trucklease as that of insured and insurer, equating the rental agreement to an insurance contract, and asserting that Trucklease's employees should be held to the same standard of care as insurance agents. We disagree with that characterization. The primary purpose of the transaction between appellant and Trucklease was for the rental of a truck, and the fact that the rental agency may procure insurance through an insurance provider does not, in our view, transform the rental agreement into an insurance policy, nor does such activity make employees of the rental agency insurance agents. Further, Ohio authority does not support appellant's characterization of a rental agreement as an insurance policy. See Siatis v. Shaw,
Montgomery App. No. 19207, 2003-Ohio-616, at ¶ 35 (car rental agreement is "not a liability insurance contract or policy, in which [rental company] promised to defend and indemnify [renter]. Rather it is a contract wherein [rental company] promised to procure that form of coverage"); Workman v. GMAC Daily Rental
(Apr. 24, 2000), Brown App. No. CA99-10-027 (rental agreement containing a provision offering liability and physical damage insurance, and setting forth limits of insurance, "does not itself constitute an insurance policy").
 {¶ 44} In general, "`the existence of a contract action * * * excludes the opportunity to present the same case as a tort claim.'" Textron Fin. Corp. v. Nationwide Mut. Ins. Co.
(1996), 115 Ohio App.3d 137, 151. When an alleged breach of duty is one "arising out of a contract, independent of any duty imposed by law, the cause of action is one of contract, not tort." Creative Hardwood Floors, Inc. v. Schafer (Mar. 24, 1998), Fairfield App. No. 97-CA-56. In contrast, "[t]he tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." Battista v. Lebanon Trotting Assoc.
(C.A. 6, 1976), 538 F.2d 111, 117. Thus, where the causes of action in tort and in contract are "factually intertwined," a plaintiff must show that the tort claims derive from the breach of duties "that are independent of the contract and that would exist by force of law notwithstanding the formation of the contract." Wexler v. Jewish Hosp. Assoc. of Cincinnati (Oct. 26, 1983), Hamilton App. No. C-820654.
 {¶ 45} In the present case, appellant's tort claims are predicated upon appellant's alleged promise and subsequent failure to ensure that appellant had coverage under the rental agreement. Those allegations are also the gravamen of appellant's contract claims. Here, the parties entered into a written agreement for the lease of a vehicle, and any purported duties and responsibilities relating to Trucklease procuring insurance on behalf of appellant arose out of that contract. As the relationship of the parties was contractual, and finding that appellant's contention that Trucklease or its employees negligently performed the agreement does not encompass a duty independent of the rental agreement, we conclude that the trial court did not err in granting a directed verdict as to appellant's tort claims.
 {¶ 46} Accordingly, appellant's fourth, fifth and sixth assignments of error are not well-taken and are overruled.
 {¶ 47} Based upon the foregoing, appellant's first, second, fourth, fifth and sixth assignments of error are overruled, appellant's third assignment of error is sustained in part and overruled in part, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
Bryant and Watson, JJ., concur.
[1] At trial, David Bartholow testified the deductible for a vehicle weighing more than 26,000 pounds is $5,000. In the instant case, the vehicle at issue involved a 24-foot box truck, with a gross weight of 30,000 pounds.
[2] As previously noted under the facts, the record also contains evidence that, subsequent to the accident in Indiana, appellee requested that appellant sign a second rental form utilized by the company in instances in which appellee is to procure coverage. Ohio case law suggests that the trier of fact may consider subsequent conduct of the parties as evidence of mutual mistake at the time of the execution of an agreement.Fada v. Information Sys. Networks Corp. (1994),98 Ohio App.3d 785, 790 (subsequent action demonstrates that parties made a mutual mistake in their initial agreement).