[Cite as *Bank of Am., N.A. v. Seymour*, 2019-Ohio-2884.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bank of America, N.A., | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 18AP-272 |
| | : | (C.P.C. No. 16CV-3104) |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| Melissa L. Seymour et al., | : | |
| Defendants-Appellants/ Cross-Appellees. | : | |

D E C I S I O N

Rendered on July 16, 2019

**On brief:** *McGlinchey Stafford, Bryan T. Kostura,* **and** *Melany K. Fontanazza*; *Havens Unlimited* **and** *Adam M. Schwartz*; *Manley Deask Kochalski* **and** *Kyle E. Timken*, **for appellee. Argued:** *Adam M. Schwartz* **and** *Brooke T. Bautista.*

**On brief:** *The Legal Aid Society of Columbus*, *Scott E. Torguson*, **and** *Tabitha M. Woodruff*, **for appellant Melissa L. Seymour. Argued:** *Scott E. Torguson.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Defendant-appellant, Melissa L. Seymour, appeals a judgment of the Franklin County Court of Common Pleas ordering the reformation of a mortgage and granting the foreclosure sought by plaintiff-appellee, Bank of America, N.A. Additionally, Bank of America cross-appeals from the same judgment. For the following reasons, we reverse that judgment and remand this matter to the trial court.

{¶ 2}  Melissa has resided at 4648 Faith Avenue in Whitehall, Ohio, for her entire life.  Originally, Melissa's parents owned the Faith Avenue property.  When Melissa's father died in 1996, the house became the property of Melissa's mother, Joan Seymour.

{¶ 3}  On February 18, 2004, Joan executed a deed that conveyed the Faith Avenue property to herself and her daughter as "joint tenants with rights of survivorship."  (Pl.'s Ex. H.)  This deed was recorded with the Franklin County Recorder on March 5, 2004.

{¶ 4}  In December 2006, Joan Seymour executed a note promising to pay $107,850, plus interest, to her lender, Bank of America.  Melissa did not sign the note.

{¶ 5}  At the same time Joan entered into the note, both Joan and Melissa executed a mortgage intended to secure the note.  In relevant part, the mortgage provides that:

> This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located [at] * * * 4648 Faith Avenue [in Whitehall, Ohio].

(Pl.'s Ex. B at 3.)  The mortgage defines "Borrower" to mean "Joan Seymour and Melissa L. Seymour, her daughter, signing solely to release dower interest."  *Id.* at 1.  Under Melissa's signature appears the words "Melissa L. Seymour, signing to release dower interest."  *Id.* at 15.

{¶ 6}  Indisputably, Melissa did not possess a dower interest in the Faith Avenue property.  The right of dower entitles a spouse to a life estate in one-third of the real property acquired by the other spouse during the marriage.  R.C. 2103.02; *Wells Fargo Bank, N.A. v. Kessler*, 10th Dist. No. 15AP-216, 2015-Ohio-5085, ¶ 16.  As Joan's daughter, Melissa could not obtain a dower interest.

{¶ 7}  Melissa, however, did possess a legally recognized interest in the Faith Avenue property.  The 2004 deed created a survivorship tenancy because it conveyed to Joan and Melissa an interest in real property for their joint lives and then to the survivor of them.  *See* R.C. 5302.20(A).  Under the survivorship tenancy, Joan and Melissa each held an equal share of the title to the property during their joint lives.  *See* R.C. 5302.20(B).

{¶ 8}  By signing the mortgage, Melissa only released a non-existent dower interest; she did not mortgage the interest she possessed by virtue of the survivorship tenancy.  Bank

of America, therefore, did not secure a mortgage on the entire fee interest in the property. Instead, Bank of America acquired a mortgage solely on Joan's interest in the property.

{¶ 9}   This hitch in the mortgage did not cause Bank of America any problem as long as Joan made her monthly mortgage payments.  However, Bank of America stopped receiving payments when Joan passed away in October 2015.

{¶ 10} On March 30, 2016, Bank of America filed an action in foreclosure against Melissa.  This action faced a major obstacle:  Bank of America's mortgage terminated when Joan died and Melissa became the sole title holder of the property.  *See* R.C. 5302.20(B) (upon the death of one of two joint tenants, "the survivor is fully vested with title to the real property as the sole title holder"); *CitiMortgage, Inc. v. Brown*, 1st Dist. No. C-140694, 2015-Ohio-5347, ¶ 9 (holding that a mortgage terminated with the death of the mortgaging joint tenant when title was held by two people in a survivorship tenancy, and the second joint tenant signed the mortgage solely to release a dower interest).  To circumvent this obstacle, Bank of America asked the trial court to reform the mortgage to remove the language indicating that Melissa signed the mortgage only to release a dower interest. Bank of America asserted that the removal of the designated language would conform the mortgage to the parties' intent:  to encumber the entire Faith Avenue property.  With the mortgage reformed, Bank of America would possess a mortgage on the entire fee interest in the property and could proceed with its foreclosure action.

{¶ 11} In the alternative to reformation, Bank of America claimed entitlement to an equitable lien on the property.  Bank of America also asserted claims for breach of the note, unjust enrichment, and breach of the mortgage.[1]

{¶ 12} Melissa answered the complaint and filed a counterclaim to quiet title to the Faith Avenue property.  Melissa pointed out that Joan's death extinguished Bank of America's mortgage.  Consequently, Melissa asserted that the mortgage constituted a cloud on her title to the property, and she requested that the trial court remove it.

{¶ 13} A trial before a magistrate occurred on November 1, 2017.  Nathan Musick, a representative of Bank of America, and Melissa testified.  Bank of America offered into evidence relevant documents, including the 2004 deed and the 2006 note and mortgage.

---

[1]   Bank of America later abandoned its claim for breach of the note as Joan, the sole signatory to the note, was deceased.

{¶ 14} In a decision issued November 2, 2017, the magistrate recommended that the trial court (1) reform the mortgage to reflect that Melissa had encumbered her one-half interest in the Faith Avenue property when she signed the mortgage, and (2) order the foreclosure of the property. The magistrate found that this resolution of the case mooted Bank of America's claims for breach of the mortgage, unjust enrichment, and the establishment of an equitable lien.[2] Finally, the magistrate recommended that the trial court grant judgment to Bank of America on Melissa's claim to quiet title to the property.

{¶ 15} Melissa objected to the magistrate's decision. In a decision issued February 26, 2018, the trial court overruled Melissa's objections. On March 20, 2018, the trial court entered judgment reforming the mortgage and granting foreclosure.

{¶ 16} Melissa now appeals the March 20, 2018 judgment, and she assigns the following errors:

> [1.] The Trial Court Erred By Reforming the Contract[.]
>
> [2.] The Trial Court Committed An Error Of Law By Granting Bank Of America's Unjust Enrichment Claim[.]
>
> [3.] The Trial Court Erred By Granting Bank Of Ameri[c]a Foreclosure[.]
>
> [4.] The Trial Court Erred By Denying Melissa Seymour's Quiet Title Claim[.]

{¶ 17} Bank of America appeals as well, and it assigns the following conditional cross-assignments of error:

> [1.] If Appellee is not allowed to reform its Mortgage or it is found to be entirely invalid, the Tenth District should follow the trial court and Magistrate's advice that Appellant was unjustly enriched and/or that Appellee should have an equitable lien.
>
> [2.] If (1) Appellee is not allowed to reform its Mortgage or it is found to be entirely invalid, and (2) if Appellee has no equitable lien, the Tenth District should conclude in the first instance that Appellant breached the Mortgage.

---

[2] The magistrate concluded that the grant of reformation and foreclosure precluded Bank of America from recovering under its claim for unjust enrichment. Nevertheless, the magistrate considered whether Bank of America had satisfied the elements of unjust enrichment, and he offered the advisory opinion that Bank of America would have been entitled to relief under that claim had no mortgage on Melissa's interest in the property existed.

{¶ 18} By her first assignment of error, Melissa argues that the trial court erred in reforming the mortgage because: (1) Bank of America did not prove a mutual mistake, and (2) Bank of America's inexcusable negligence precluded the trial court from reforming the mortgage. We are not persuaded by Melissa's first argument, but we find her second argument warrants further consideration on remand.

{¶ 19} Melissa's arguments challenge the sufficiency and weight of the evidence supporting the trial court's decision to reform the mortgage. We will not disturb the trial court's judgment if it is supported by some competent, credible evidence going to all essential elements of the claim for reformation. *Shear v. W. Am. Ins. Co.*, 11 Ohio St.3d 162, 164-65 (1984); *Medi Rx Realty, LLC v. Susany*, 7th Dist. No. 08-MA-139, 2009-Ohio-1029, ¶ 22.

{¶ 20} Equity permits a court to reform a contract when, due to a mutual mistake of the parties, the contract does not evince the actual agreement entered into between the parties. *Wagner v. Natl. Fire Ins. Co.*, 132 Ohio St. 405, 412 (1937); *Mtge. Electronic Registration Sys. v. Odita*, 159 Ohio App.3d 1, 2004-Ohio-5546, ¶ 23 (10th Dist.); *Cuthbert v. Trucklease Corp.*, 10th Dist. No. 03AP-662, 2004-Ohio-4417, ¶ 33. A court, therefore, may order reformation based on mutual mistake where the record contains clear and convincing proof that the parties made the same mistake and both parties understood the contract as the party seeking reformation alleges it ought to have been. *Cuthbert* at ¶ 33; *Gerace-Flick v. Westfield Natl. Ins. Co.*, 7th Dist. No. 01 CO 45, 2002-Ohio-5222, ¶ 91; *Snedegar v. Midwestern Indemn. Co.*, 44 Ohio App.3d 64, 69 (10th Dist.1988).

{¶ 21} A "mutual mistake" is a mistake common to all the parties. *Wagner* at 412; *L.B. Trucking Co. v. C.J. Mahan Constr. Co.*, 10th Dist. No. 01AP-1240, 2002-Ohio-4394, ¶ 44. A mutual mistake occurs "where the parties are mistaken as to a vital existing fact at the time of contracting." *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, ¶ 10 (10th Dist.); *accord* 1 Restatement of the Law 2d, Contracts, Section 151 (1981) ("A mistake is a belief that is not in accord with the facts.").

{¶ 22} "The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof, *i.e.*, to establish the actual agreement of the parties." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 286 (1965). Reformation, therefore, may only establish the content of a contract as intended by the

parties; it may not create a new agreement between the parties. *Id.*; *Faivre v. DEX Corp. Northeast*, 182 Ohio App.3d 563, 2009-Ohio-2660, ¶ 21 (10th Dist.); *Odita* at ¶ 24; *L.B. Trucking Co.* at ¶ 45. Consequently, a party seeking reformation must show that the contracting parties understood their agreement to contain the same terms as the proposed post-reformation contract. *Faivre* at ¶ 21. A court may not reform a contract unless the proponent of reformation establishes the existence and terms of an underlying agreement, which the court can instate in writing through reformation. *Id.*; *accord Greenfield v. Aetna Cas. & Sur. Co.*, 75 Ohio App. 122, 128 (12th Dist.1944) ("[B]efore reformation may be had, it is essential to show that a definite intention on which the minds of the parties had met pre-existed the instrument in question and that the mistake or fraud ensued in its execution.").

{¶ 23} We begin our review of the case at bar with whether the evidence establishes a mistake common to all the parties. We conclude it does. At the time of contracting, Melissa, Joan, and Bank of America shared the misconception that Melissa possessed a dower interest. Indeed, Melissa concedes that the mortgage's reference to her supposed dower interest constituted an "obvious error," which none of the parties appreciated when Joan and Melissa signed the mortgage. (Appellant's brief at 13, 16.)

{¶ 24} Melissa argues, however, that the court erred in reforming the mortgage because Bank of America did not prove that she intended to mortgage her half-interest in the Faith Avenue property. By this argument, Melissa challenges whether Bank of America established a common understanding among the contracting parties that the mortgage covered the entire property. Melissa contends that the trial court cannot reform the mortgage to extend to the entire property if she never intended to grant Bank of America a mortgage on her share of the property.

{¶ 25} A court presumes that the intent of the parties to a contract resides in the language they chose to employ in the contract. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. Here, the mortgage states that the borrower "does hereby mortgage, grant and convey to the Lender the following described property located [at] * * * 4648 Faith Avenue [in Whitehall, Ohio]." (Pl.'s Ex. B at 3.) Thus, the language used in the parties' contract did not limit the mortgage to Joan's interest in the property. The mortgage instead expressed the intent to encumber the entire fee interest in

the property. We conclude, therefore, that the parties shared a common understanding regarding the scope of the mortgage that was frustrated when Melissa signed the mortgage only to release a dower interest.

{¶ 26} In arguing to the contrary, Melissa points to her trial testimony that she did not intend to give Bank of America a mortgage on her interest in the Faith Avenue property. However, the magistrate and trial court did not find this testimony credible. We see no reason to second-guess that credibility determination. Melissa also testified that she "honestly didn't know" what she was doing when she signed the mortgage, and she signed because her "mom just said sign it." (Tr. at 36.) Without knowing the import of her signature on the mortgage, Melissa could not form the intent to keep her interest unencumbered by the mortgage. We also note that Melissa signed a previous mortgage, which demonstrated her willingness to encumber her interest in the property.

{¶ 27} Melissa next argues that Bank of America's inexcusable negligence barred it from obtaining reformation of the mortgage. Melissa contends that Bank of America should have known that she, as the mortgaging party's daughter, could not possess a dower interest. Thus, Melissa claims, Bank of America acted with inexcusable negligence when it drafted the mortgage with an obvious error and failed to identify that error during a post-execution review of the mortgage.

{¶ 28} Generally, equity will not aid the negligent. *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 285 (1989). Mistakes, however, rarely occur without some degree of negligence on the part of the party seeking reformation. *Crout v. D.E.R. Bldg. Co.*, 12th Dist. No. CA2000-12-039 (Nov. 13, 2001). To justify granting the equitable relief of reformation to mistaken (and likely negligent) parties, courts have concluded that " 'the mere fact that a mistake was made in an instrument does not show such negligence as to bar the right of reformation, for if that were so a court of equity never could interfere.' " *Hartman v. Tillett*, 86 Ohio App. 20, 23 (12th Dist.1948), quoting 45 American Jurisprudence, Section 78, at 632; *accord* 27 Lord, *Williston on Contracts*, Section 70:48 (4th Ed.) (the failure to exercise reasonable care does not preclude reformation because, otherwise, the availability of such relief would be severely circumscribed); 1 Restatement of Law 2d, Contracts, Section 157, Comment a (1981) (same). Consequently, a party seeking reformation need not show that it is wholly free from fault before a court will order

reformation. *Natl. City Real Estate Servs., LLC v. Frazier*, 4th Dist. No. 17CA3585, 2018-Ohio-982, ¶ 30; *Cuthbert*, 2004-Ohio-4417, at ¶ 35. Error that is merely inadvertent or excusable does not preclude reformation of a contract. *Frazier* at ¶ 30; *Crout*.

{¶ 29} Nevertheless, when a party's degree of fault rises to the level of inexcusable neglect, a court may not grant that party reformation. *Frazier* at ¶ 31; *Wells Fargo Bank Minnesota v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650, ¶ 37 (4th Dist.); *accord Brown*, 2015-Ohio-5347, at ¶ 31 ("While equity may sometimes relieve a party of the result of negligence that is excusable, it will not relieve a party from inexcusable negligence."). In determining the critical point at which a party's negligence becomes inexcusable, this court and others have relied on Section 157 of the Restatement (Second) of Contracts. *Frazier* at ¶ 31; *Motorists Mut. Ins. Co.*, 168 Ohio App.3d 691, 2006-Ohio-5090, at ¶ 14. Under Section 157, a party's fault in failing to know or discover the facts before making a contract precludes reformation if the fault amounts to a failure to act in good faith or in accordance with reasonable standards of fair dealing. As a general matter, a company's negligence becomes inexcusable under this rule when the company fails to conform to the fair and reasonable standards of practice within the company's industry. *Motorists Mut. Ins. Co.* at ¶ 14; *accord Mowery* at ¶ 38 ("A mortgage company's failure to learn the most basic facts about a mortgaged property cannot be excusable negligence."); *Brown* at ¶ 31 (denying a bank equitable relief because the bank's negligence was inexcusable where it was "evident from a simple examination of the mortgage" that a joint tenant signed the mortgage with the sole intent to release a dower interest, and not to mortgage his one-half interest in the property).

{¶ 30} Inexcusable negligence is not " 'a static concept subject to mechanical application,' " but rather, " 'requires careful consideration of the facts to determine if the party seeking reformation * * * is, both in light of personal action taken and as a matter of equity, entitled to such relief.' " *Berry v. Bowling*, 4th Dist. No. 18CA1068, 2019-Ohio-898, ¶ 27, quoting *Williston on Contracts*, Section 70:49. Courts must parse the unique equities of each case in determining whether a party deserves to have a written instrument reformed. *Id.*

{¶ 31} In the case at bar, the magistrate did not consider whether Bank of America engaged in inexcusable neglect. Melissa objected to this failure, and the trial court

addressed Melissa's objection. The trial court, however, did not analyze Bank of America's conduct to determine whether it amounted to inexcusable neglect. Rather, the trial court found that the magistrate did not err in failing to find inexcusable neglect because Melissa intended to grant Bank of America a mortgage on her portion of the property. Inexcusable neglect turns on the behavior of the party seeking reformation, not the contractual intent of the party opposing reformation. We conclude, consequently, that the trial court erred by not weighing the relevant evidence to reach a determination regarding inexcusable neglect. Because we cannot perform such a weighing in the first instance, we must remand this case to the trial court for it to fulfill its duty as the finder of fact. Therefore, we sustain Melissa's first assignment of error, but only to the extent that she argues that the trial court erred in its consideration of inexcusable neglect.

{¶ 32} By her second assignment of error, Melissa argues that the trial court erred in granting Bank of America judgment on its claim for unjust enrichment. The trial court, however, did not make such a ruling. At most, the trial court issued an advisory opinion, which we will not review. *See Nelnet, Inc. v. Rauch*, 10th Dist. No. 18AP-555, 2019-Ohio-561, ¶ 11 ("[A]n advisory opinion is not subject to appeal."). Accordingly, we overrule Melissa's second assignment of error.

{¶ 33} By her third assignment of error, Melissa argues that the trial court erred in granting Bank of America's request for foreclosure. As this case is currently postured, the grant of foreclosure on the Faith Avenue property hinged upon reformation of the mortgage. Without reformation of the mortgage to encumber the entire property, foreclosure could not occur. Our resolution of the first assignment of error requires a reversal of the grant of reformation. Given that the foreclosure was contingent upon the reformation, we must sustain the third assignment of error, which challenges the foreclosure order. If the trial court decides on remand that reformation is appropriate, it may reinstitute foreclosure.

{¶ 34} By her fourth assignment of error, Melissa argues that the trial court erred by granting Bank of America judgment on her claim to quiet title. Like foreclosure, judgment on the claim to quiet title depends on the outcome of Bank of America's request for reformation. Accordingly, we also sustain Melissa's fourth assignment of error.

{¶ 35} Finally, we must address Bank of America's two conditional cross-assignments of error. As none of the conditions set forth in those cross-assignments of error has occurred, we find the cross-assignments of error moot.

{¶ 36} For the foregoing reasons, we sustain Melissa's first, third, and fourth assignments of error; we overrule Melissa's second assignment of error; and we overrule as moot Bank of America's two cross-assignments of error. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed; cause remanded.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

———————————