**TERSIGNI et al., Appellants,**

v.

**GENERAL TIRE, INC., Appellee.**

[Cite as *Tersigni v. Gen. Tire, Inc.* (1993), 91 Ohio App.3d 757.]

Court of Appeals of Ohio,
Summit County.

Nos. 15904, 16003, 16092, 16131.

Decided Oct. 20, 1993.

*Andrew L. Margolius* and *Gloria Rowland Homolak,* for appellants.

*Edward C. Kaminski, James D. Kurek* and *Vincent J. Tersigni,* for appellee.

Cook, Presiding Judge.

The appellants, Anita Tersigni, Mary Coleman, Thomas Brown, Joseph DiSantis, and Janet Johnson, appeal from the order of the Summit County Court of Common Pleas granting summary judgment to the appellee, General Tire, Inc. ("General Tire").

### Facts

In 1979, General Tire first devised a procedure for eliminating jobs whereby more senior employees would displace or "bump" less senior employees in the same or similar position. The policy was first put into writing in 1980 and distributed to management personnel. In the early 1980s, General Tire decreased its number of employees from approximately four thousand to about nine

hundred. The bumping policy was used throughout this period of massive layoffs.

In 1987, the bumping policy was altered slightly to cover only those employees below a certain salary level. In April 1991, the bumping policy was eliminated. General Tire then laid off approximately one hundred employees. The appellants herein, five of those employees, filed complaints against General Tire alleging promissory estoppel and breach of implied contract because General Tire failed to apply the bumping policy to them.

The appellants alleged that they knew about the widespread application of the bumping policy through communication with supervisors and other employees. They also saw the policy in action throughout the 1980s. On the strength of their seniority and the relative security of the bumping system, the appellants continued working at General Tire and did not seek other employment during the reductions in force.

General Tire filed motions for summary judgment against the appellants, which the trial court granted. The five appellants, in four cases consolidated for appeal, now appeal asserting a single assignment of error.

### Assignment of Error

"The trial courts erred in granting summary judgment in favor of the employer when genuine issues of material fact and uncontested work conditions exist which demonstrate an implied contract and promissory estoppal [*sic* ] rights for employees to bump."

### Summary Judgment

Under Civ.R. 56(C), a trial court may grant a motion for summary judgment only when (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. " 'Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party * * *.' " *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 2, 433 N.E.2d 615, 616, quoting *Vetovitz Bros., Inc. v. Kenny Constr. Co.* (1978), 60 Ohio App.2d 331, 332, 14 O.O.3d 292, 293, 397 N.E.2d 412, 414. This court will reverse a summary judgment whenever it finds that reasonable minds could come to differing conclusions based on the evidence before the trial court.

### Employment-at-Will

Under Ohio law, an employee who is hired for an indefinite period of time is an employee at will and may be terminated at any time for any reason not

contrary to law. *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118, syllabus. However, in *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, the Ohio Supreme Court recognized two exceptions to the general rule of employment at will: implied contract and promissory estoppel. Having allowed for the possibility of modifying the at-will relationship, a court in considering summary judgment now must look for evidence supporting each theory.

### Implied Contract

The *Mers* court recognized that the cumulative effect of various events may transform an employment-at-will agreement into an implied contract. *Mers, supra,* at paragraph two of the syllabus. The *Mers* court stated:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

■ To prove that they had an enforceable contract with the employer, the employees must establish an offer, acceptance, and consideration. Contrary to the appellee's argument, they need not rebut a lack of mutual assent defense. "As a contract defense, the mutuality doctrine has become a faltering rampart to which a litigant retreats at his own peril." *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 12, 15 OBR 22, 33, 472 N.E.2d 765, 776.

In *Mers,* the employee manual and oral assurances to the employee were enough to present a jury question on the existence of an offer to make a contract. While in *Mers* the employee actually had read the manual, in *Kelly v. Georgia–Pacific Corp.* (1989), 46 Ohio St.3d 134, 545 N.E.2d 1244, the employee had not. In that case, the court held that oral assurances of job security based on a written policy along with the history of relations between the parties were enough to constitute an offer to make a unilateral employment contract. *Id.* at 139–140, 545 N.E.2d at 1249–1250.

" 'Notice of a company's benefit policy may be disseminated to its employees in a number of ways. Employees need not have examined the actual policy in a personnel manual or some other employee handbook prior to or during their employment with an employer in order for there to be an offer capable of acceptance. Aside from actually reading the policy, employees also may learn of a benefit policy from company notices, from talking to other employees, or from prior occasions where the benefits in question had been given to eligible employees under similar circumstances.' " *Helle,* 15 Ohio App.3d at 10–11, 15 OBR at

32, 472 N.E.2d at 775–776, fn. 10, quoting DeGiuseppe, The Effect of the Employment-at-Will Rule on Employee Rights to Job Security and Fringe Benefits (1981), 10 Fordham Urban L.J. 1, 51–52.

■ In this case, the employees alleged, supported by their Civ.R. 56 evidence, that the bumping policy was:

1. identified in writing and in detail;

2. clear in its procedures, available to employees, and relied on by employees;

3. widely and uniformly followed for a period in excess of one decade with management expecting employees to be aware of, and rely on procedures;

4. enforceable and followed without any exercise of discretion by supervisors;

5. discussed and/or intended by management to be communicated between supervisors and the employees; and

6. observed by the plaintiffs as applied to similarly situated employees.

Although the plaintiffs did not receive a written copy of the bumping policy, there was sufficient evidence of the policy's existence and application to present a question of fact as to whether it constituted an offer to alter the employment-at-will relationship between the parties.

The disclaimer that General Tire added to its employee manual, more than eleven years after the bumping policy was put into effect, is not enough to take this issue from the jury.

"[T]o the extent that the oral assurances * * * conflicted with the manual's disclaimers, or induced appellants to disregard their significance * * * such representations will negate the effect of disclaimers which are intended to absolve the employer from liability for unilateral alterations of or deviations from policies presented in the written manual or similar employer writings." *Helle,* 15 Ohio App.3d at 10, 15 OBR at 31, 472 N.E.2d at 775.

Factual questions arise if the meaning of a disclaimer is ambiguous. *Pond v. Devon Hotels, Ltd.* (1988), 55 Ohio App.3d 268, 272, 563 N.E.2d 738, 742–743.

Having found that an issue of fact exists as to whether General Tire made an offer of bumping rights to these employees, this court must review whether there is evidence supporting an acceptance with consideration. As in *Helle,* this offer anticipated the formation of a unilateral contract. A jury could reasonably find that acceptance was effective when the employees performed, that is, when they remained on the job after having learned of the bumping policy. This continued service and loyalty is also evidence of consideration supporting the employment contract. *Helle,* 15 Ohio App.3d at 11, 15 OBR at 32, 472 N.E.2d at 775–776.

In this case, we find there was enough relevant evidence to give rise to a jury question on the issue of implied contract.

*Promissory Estoppel*

■ As the court in *Mers* recognized:

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Id.* at paragraph three of the syllabus.

This court addresses each of these three elements: promise, foreseeability, and detrimental reliance, in turn.

■ The facts which support a possible offer in a contract analysis are more than enough to support a promise in the promissory estoppel context as long as "the employer should have reasonably expected its representation to be relied upon by its employee." *Id.* Employee manuals (*Balbach v. Akron Metro. Hous. Auth.* [Feb. 6, 1987], Summit App. No. 12292, unreported, 1987 WL 6663), or oral representations (*Helmick v. Cincinnati Word Processing, Inc.* [1989], 45 Ohio St.3d 131, 543 N.E.2d 1212; *Mers, supra* ) alone may constitute a promise.

■ The employees' reliance is reasonable if the employer should have expected them to base their actions or forbearance on its promise. The employer's subjective intent is not controlling. *Mers,* 19 Ohio St.3d at 105, 19 OBR at 265–266, 483 N.E.2d at 154–155. The question of reasonableness is by nature an issue for the jury. See *Kelly, supra.* In *Hedrick v. Ctr. for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App.3d 211, 7 OBR 272, 454 N.E.2d 1343, the court held that the employee's mere allegation of reasonable reliance was enough to provide a jury question. *Id.* at 214, 7 OBR at 275, 454 N.E.2d at 1346–1347. In this case, the employees do. more. They offer evidence that the employer encouraged them to rely on the bumping procedure.

■ Even if the employee could have reasonably relied on the employer's promise, promissory estoppel does not apply unless the employee actually did rely. That an employee did not seek other work after becoming aware of the employer's promise is enough to support detrimental reliance. *Kelly, supra; Mers, supra.* In this case, the employees offer evidence that they did not seek other work even in the face of the employer's massive reduction in force. A jury could reasonably conclude that the employees felt secure at General Tire because of the bumping policy's long history, their supervisors' assurances, and their years of service.

■ This court finds the reasoning of the Lucas County Court of Appeals persuasive: "If an employer is allowed to make unqualified and high-sounding promises of fair treatment and job security in order to obtain loyal and long-standing employees, and then disaffirm such promises and rely on the 'at-will' doctrine * * *, injustice will frequently result." *Jones v. East Ctr. for Community Mental Health, Inc.* (1984), 19 Ohio App.3d 19, 23, 19 OBR 85, 89, 482 N.E.2d 969, 974. The appellants offered the trial court enough evidence to support each of the elements of both implied contract and promissory estoppel. Accordingly, their assignment of error is well taken. We reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

BAIRD and DICKINSON, JJ., concur.