MOTORISTS MUTUAL INSURANCE COMPANY, Appellee,

v.

COLUMBUS FINANCE, INC., Appellant.

[Cite as *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.,* 168 Ohio App.3d 691, 2006-Ohio-5090.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–1116.

Decided Sept. 29, 2006.

---

Keis George, L.L.P., and Scott T. Knowles, for appellee.

Robert J. Mann, for appellant.

———

BROWN, Judge.

{¶ 1} Columbus Finance, Inc. ("CFI"), defendant-appellant, appeals the judgment of the Franklin County Municipal Court, in which the court found that Motorists Mutual Insurance Company, plaintiff-appellee, was entitled to recover an automobile liability insurance payout made by Motorists to CFI.

{¶ 2} CFI financed a vehicle purchased by Monica Randall and obtained a security interest on the vehicle. On July 17, 2003, Randall was a passenger in the vehicle she owned, while the vehicle was being operated on Interstate 71 in Columbus, Ohio, by Shirley Simons. Simons and Randall were involved in an accident caused by the negligence of the driver of another vehicle owned by Bessie Simpkins and operated by Brian Hatfield. Randall's car was a total loss.

{¶ 3} Motorists contacted CFI and indicated that Motorists' insured was at fault in the Randall accident. On July 25, 2003, Motorists and CFI executed a lienholder's agreement to furnish title, in which they agreed that Motorists would pay CFI $4,568.81 if CFI would cancel its lien on Randall's certificate of title, surrender the title, and deliver the vehicle to Motorists. Motorists received the vehicle on July 27, 2003. On July 29, 2003, CFI canceled its lien on the vehicle title and delivered the title to Motorists, after which Motorists paid CFI $4,568.81. CFI deposited the check on the same day, stamped Randall's note "Paid," and surrendered the note to Randall. CFI paid Randall an overage on her payoff, and Randall deposited the check the same day, July 29, 2003.

{¶ 4} On August 4, 2003, Motorists contacted CFI and informed CFI that Motorists had misidentified the parties involved in the Randall accident and, thus, the payment was in error. Apparently, on the same date and the same highway as the Randall accident, Lisa Barnick, who was Motorists' insured, negligently caused an accident involving Douglas Simmons. Motorists claimed that it had confused the names of the parties involved in the Randall and Barnick accidents and mistakenly linked the two claims as being the same. CFI refused to return the payment to Motorists.

{¶ 5} On August 23, 2004, Motorists filed an action against CFI seeking repayment of the insurance proceeds paid by Motorists to CFI. The parties entered into stipulations prior to trial, and a trial was held before the court. On September 21, 2005, the trial court issued a judgment in favor of Motorists, finding that CFI must return the payment to Motorists. CFI has appealed the court's order, asserting the following assignments of error:

Assignment of Error No. I: The lower court erred as a matter of law and fact and abused its discretion in failing to enforce the contract between the parties.

Assignment of Error No. II: The lower court erred as a matter of law and fact and abused its discretion in holding that there was an alleged mistake which permitted Motorists to recover its payment, including failing [to] hold that even if there was a mistake, A) CFI detrimentally changed its position in reliance upon Motorists' conduct and payment, and B) Motorists was under a legal duty to determine the correct facts regarding the claim it paid, both of which preclude recovery based upon an alleged mistake.

Assignment of Error No. III: The lower court erred in failing to accept the stipulations of the parties, and in adding facts not stipulated to by the parties.

Assignment of Error No. IV: The lower court erred as a matter of law, abused its discretion, and entered a decision contrary to the manifest weight of the evidence in holding that Motorists was not negligent and exercised due diligence in making the payment at issue.

Assignment of Error No. V: The lower court erred in failing to hold that Motorists' negligence or failure to exercise due diligence barred recovery of an alleged mistaken payment.

Assignment of Error No. VI: The lower court erred in failing to hold Motorists' claim was barred by estoppel.

Assignment of Error No. VII: The lower court abused its discretion and its decision is against the manifest weight of the evidence and otherwise contrary to the facts.

{¶ 6} We will address CFI's first, second, fourth, and fifth assignments of error together, as they are related. CFI argues in its first assignment of error that the trial court erred in failing to enforce the lienholder's agreement between the parties. CFI argues in its second assignment of error that the trial court erred when it held that there was a mistake that permitted Motorists to recover its payment. CFI argues in its fourth and fifth assignments of error that the trial court erred when it failed to find that Motorists was barred from recovery because Motorists was negligent in making the payment to CFI.

{¶ 7} The existence of a contract is a question of law. *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, at ¶ 12, citing *Telxon Corp. v. Smart Media of Delaware, Inc.*, Summit App. No. 22098, 2005-Ohio-4931, 2005 WL 2292800, at ¶ 40. This court reviews questions of law regarding the existence of contracts de novo. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431. A valid contract consists of an offer, acceptance, and consideration. *Tersigni v. Gen. Tire, Inc.* (1993), 91 Ohio App.3d 757, 760, 633 N.E.2d 1140. A meeting of the minds as to the essential terms of the agreement is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

{¶ 8} In the present case, the trial court found that the lienholder's agreement did not create a contract, although it gave no explanation. However, after a review of the record and the lienholder's agreement, we find that an enforceable contract was formed. The contract complied with the three requirements of proper contract formation: offer, acceptance, and consideration. An offer is defined as "the manifestation of willingness to enter into a bargain, so

made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Reedy v. Cincinnati Bengals, Inc.* (2001), 143 Ohio App.3d 516, 521, 758 N.E.2d 678. Here, the lienholder's agreement memorialized Motorists' definite offer of $4,568.81 in settlement of Randall's vehicle damage. Further, conduct sufficient to show agreement, including performance, constitutes acceptance. *Nagle Heating & Air Conditioning Co. v. Heskett* (1990), 66 Ohio App.3d 547, 550, 585 N.E.2d 866. In the current case, the lienholder's agreement indicates CFI's acceptance of Motorists' payment to satisfy the settlement. As to consideration, it may consist of either a detriment to the promisee or a benefit to the promisor. A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee. *Lake Land Emp. Group of Akron, L.L.C. v. Columber,* 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, at ¶ 16. Here, Motorists agreed to pay CFI $4,568.81 in settlement of any claim CFI had against Motorists, thereby constituting sufficient consideration.

{¶ 9} However, that the basic elements for contract formation existed does not end the inquiry. To constitute a valid contract, there must also be a meeting of the minds of the parties. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 2 OBR 632, 442 N.E.2d 1302. Although, in the present case, there was a meeting of the minds as to the contents of the agreement and the parties' duties, there must also exist a meeting of the minds with regard to the underlying formation of the contract. A mutual mistake of fact results in a lack of a meeting of the minds, see *Robert's Auto Ctr., Inc. v. Helmick,* Summit App. No. 21073, 2003-Ohio-640, 2003 WL 294354, fn. 1, and "calls into question the very existence of the contract," *Reitz v. West* (Aug. 30, 2000), Summit App. No. 19865, 2000 WL 1226617. Thus, a mutual mistake as to a material part of a contract can be grounds for the rescission of the contract and renders the contract voidable. *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 632 N.E.2d 507.

{¶ 10} In the present case, the parties executed the lienholder's agreement and performed their duties thereunder, based upon a mutual mistake of fact. A mutual mistake of fact is present when a mistake by both parties as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances. *Reilley,* 69 Ohio St.3d at 353, 632 N.E.2d 507, citing 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1). The rule of mutual mistake is applicable in those situations in which the parties are mistaken as to a vital existing fact at the time of contracting. *Mollenkopf v. Weller,* Franklin App. No. 03AP–1267, 2004-Ohio-5539, 2004 WL 2345558, citing Calamari & Perillo, Law of Contracts (2 Ed.1977) 498, Section 13–13. Here, the parties executed the lienholder's agreement under the mistaken

belief that the vehicle for which CFI was a lienholder had been in an accident caused by a vehicle insured by Motorists. Both parties performed their duties under the contract based upon this mistaken belief, and neither would have entered into the agreement had they known it was not Barnick, Motorists' true insured, who was responsible for the Randall accident. That it had not been Barnick who was at fault in the accident with Randall was a vital fact and basic assumption underlying the parties' formation of a contract and had a material effect on the agreed exchange of performances. Therefore, a mutual mistake of fact existed, and the contract was voidable.

{¶ 11} However, when there has been a mutual mistake, the contract is voidable by the adversely affected party only if that party did not bear the risk of the mistake under the rule stated in 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 154. Section 154 provides that a party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties; (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient; or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. *Mollenkopf*, 2004-Ohio-5539, 2004 WL 2345558, at ¶ 15, citing Restatement, Mistake, Section 154. Here, we find that the risk of mistake must be allocated to Motorists because it is reasonable under the circumstances to do so. Motorists is responsible for the error at hand. Motorists failed to adequately investigate the Barnick accident. Motorists claims that it confused the names involved in the two accidents, but a review of the accident reports or further communications with its insured would have revealed the proper parties. It is apparent that Motorists also did not review the accident reports or adequately communicate with its insured before executing the lienholder's agreement and paying CFI. Reasonable standards of practice in the insurance industry demand that an insurer investigate an accident involving its insured and determine the proper parties involved prior to binding itself under contract to make a settlement payment. Thus, Motorists not only was responsible for the initial error in misidentifying the parties involved, but it also failed to properly oversee the matter throughout the full period of the settlement process.

{¶ 12} Further, as merely the lienholder of a customer involved in an accident, CFI was an innocent party and bore no responsibility to discover the proper insureds involved. CFI is not a processor of insurance claims and was responsible only for obtaining a satisfaction in settlement of the loss of the vehicle for which it possessed a lien. Motorists represented itself as the proper party to pay the settlement, and CFI accepted the payment via Motorists' lienholder's agreement. Motorists, as an insurer, had the ability and the responsibility to deter-

mine its own liability. CFI had no reason to scrutinize the matter as long as it had Motorists' promise to pay, and CFI reasonably proceeded with its usual course of business in handling the matter after Motorists executed the lienholder's agreement. Motorists does not allege that CFI knew of Motorists' error, misled Motorists, or committed any fraud in accepting the payment. Therefore, given that Motorists had access to the facts upon which the mistake was founded but failed to properly investigate the matter both immediately after the accidents and prior to payment to CFI, Motorists should bear the costs of the mistake over CFI.

{¶ 13} Furthermore, the Ohio Supreme Court has recognized the doctrine of mutual mistake as a ground for rescission only where the complainant is not negligent in failing to discover the mistake. See *Reilley*, 69 Ohio St.3d at 352–353, 632 N.E.2d 507, citing *Irwin v. Wilson* (1887), 45 Ohio St. 426, 15 N.E. 209 (mutual mistake in real estate purchase contract). Although this court has analyzed the mutual-mistake issue in the context of a real estate purchase contract transaction, as was the case in *Reilley*, and found that rescission is limited to circumstances in which the complaining party was not negligent, see, e.g., *Hadden Co., L.P.A. v. Del Spina*, Franklin App. No. 03AP–37, 2003-Ohio-4507, 2003 WL 22006842, at ¶ 16, this court has also analyzed the mutual-mistake issue in the context of a real estate contract without mentioning negligence and relying only upon the Restatement's proviso that a contract is voidable by the adversely affected party unless he bears the risk of the mistake, see *Shank v. Porter*, Franklin App. No. 01AP–838, 2002-Ohio-1075, 2002 WL 392274. This court has also analyzed mutual-mistake issues in types of cases other than real estate transactions under Section 154 of the Restatement without any mention of negligence by the complaining party. See, e.g., *Mollenkopf*, 2004-Ohio-5539, 2004 WL 2345558. Other courts have applied the notion of negligence to mutual-mistake cases even when the facts did not involve a real estate transaction. See, e.g., *State v. Barrera* (July 16, 1999), Sandusky App. No. S–98–047, 1999 WL 504216 (error in plea agreement).

{¶ 14} Notwithstanding these varying analyses, even considering the present case under the negligence requisite discussed in *Reilley*, we find that Motorists' failure to discover the mistake constituted negligence. Motorists was a sophisticated party and was experienced in insurance matters. See *Reilley*, 69 Ohio St.3d at 354, 632 N.E.2d 507 (the appellant was not negligent in failing to discover the mistake because he was "unsophisticated" in real estate law). Specifically, Motorists, through its automobile insurance business, was in the daily practice of insuring motor vehicles, identifying parties involved in motor vehicle accidents involving its insureds, and entering into settlements with those claiming damages as a result of the negligence of its insureds. Further, there is no evidence that

Motorists was peculiarly or involuntarily rushed or pressured to enter into the lienholder's agreement and settle the matter. In these respects, Motorists' negligence was not merely inadvertence or excusable neglect. See *Hartman v. Tillett* (1948), 86 Ohio App. 20, 23, 40 O.O. 456, 89 N.E.2d 613 (negligence that is mere inadvertence or excusable does not preclude reformation of a contract to conform to the intention of the parties). Motorists had a duty to investigate the facts but breached the duty and wholly failed to investigate with whom it was making the contract. Motorists' fault amounts to a failure to conform to the fair and reasonable standards of practice within the insurance industry. See *Cuthbert v. Trucklease Corp.*, Franklin App. No. 03AP–662, 2004-Ohio-4417, 2004 WL 1879023, at ¶ 35, citing *Haven House Manor, Ltd. v. Gabel*, Wood App. No. WD–02–073, 2003-Ohio-6750, 2003 WL 22946422, at ¶ 16, citing 1 Restatement of the Law 2d, Contracts (1981) 416, Mistake, Section 157 (a party's negligence in failing to discover the facts before making a contract precludes avoidance of the contract if the fault amounts to a failure to act in accordance with reasonable standards of fair dealing). Therefore, even if we were to consider whether Motorists was negligent in making the mistake, we would find that it was so.

{¶ 15} The trial court relied heavily upon *Firestone Tire & Rubber Co. v. Cent. Natl. Bank of Cleveland* (1953), 159 Ohio St. 423, 50 O.O. 364, 112 N.E.2d 636, for several propositions. In one regard, the trial court cited *Firestone* for the notion that the general test for recovery of a mistaken payment is whether the payee, in equity and good conscience, is entitled to retain the money. Id. at 431, 50 O.O. 364, 112 N.E.2d 636. However, paragraph five of the *Firestone* syllabus refines this concept and provides that the test of the right of recovery of money paid under mistake of fact is whether "the payee has a right to retain the money * * *. If the money belongs to the payer and the payee can show no legal or equitable right to retain it he must refund it." In the present case, our determination is grounded upon a binding agreement between the parties that satisfied the essential elements of a contract; thus, CFI has shown a legal contractual right to retain the monies, thereby taking the present circumstances out of the purview of the purely equitable remedies upon which *Firestone* is based.

{¶ 16} The trial court also cited *Firestone* for the proposition that a mistaken payment made under a mistake of fact may be recovered by the payor unless the payment has caused such a detrimental change in the position of the payee that it would be unjust to require a refund. The trial court found that CFI did not detrimentally change its position. However, even if we were to consider the notion of detrimental reliance discussed in *Firestone,* we would find that CFI did, in good faith, change its position to its detriment after receiving the payment from Motorists. Although certain parts of the transaction could be undone

without any detriment to either party, such as the return of the damaged vehicle, CFI canceled Randall's original note as being "Paid," surrendered the note to Randall, and canceled the lien on the original title. As CFI no longer has the note and the note is marked "paid," it cannot reinstate the canceled lien on a new title. Further, even though the title is still in Motorists' possession and was never filed with the Bureau of Motor Vehicles, the fact remains that it is the original title, is stamped "Paid," and represents a valid cancellation of the lien. Also, even if it were theoretically possible to overcome these hurdles through further legal avenues, CFI would incur legal fees and other associated expenses in attempting to undo these matters. Therefore, we find that even if we were to analyze the present case under the equitable principles enunciated in *Firestone*, CFI would still be entitled to retain the money.

{¶ 17} For the above reasons, we find that the mutual mistake made by the parties did not render the contract voidable by Motorists and that Motorists cannot escape the terms of the lienholder's agreement. As a matter of law, the trial court erred when it found the contract to be invalid and failed to enforce the contract between the parties. Thus, CFI's first, second, fourth, and fifth assignments of error are sustained. Because we have sustained these assignments of error, CFI's third, sixth, and seventh assignments of error are moot.

{¶ 18} Accordingly, CFI's first, second, fourth, and fifth assignments of error are sustained, its third, sixth, and seventh assignments of error are moot, the judgment of the Franklin County Municipal Court is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

> Judgment reversed
> and cause remanded.

KLATT, P.J., and TRAVIS, J., concur.