**MEDVET ASSOCIATES, INC., Plaintiff,**

v.

**SEBRING et al., Defendants.**

Franklin County Municipal Court, Ohio.

No. 2006 CVF 035833.

Decided Feb. 9, 2007.

Robert M. Storey, for plaintiff.

Laura Adkins Bogrees, for defendants.

DORRIAN, Judge.

{¶ 1} A court trial was held. Plaintiff was represented by attorney Robert M. Storey. Defendants was represented by attorney Laura Adkins Bogrees. A

court reporter was present. Sworn testimony was taken. The court enters judgment for the plaintiff against defendants.

{¶ 2} Plaintiff filed a complaint on an account against defendants on August 22, 2006, alleging that defendants owe plaintiff the sum of $1,494.40 upon an account for veterinary services rendered by plaintiff to defendants' dog, Zoe.

{¶ 3} "An action upon account is founded in *contract*. It exists to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action. Rather, the cause of action exists only as to the balance that may be due one of the parties as a result of the series of transactions." (Emphasis added.) *Am. Sec. Serv., Inc. v. Baumann* (1972), 32 Ohio App.2d 237, 242, 61 O.O.2d 256, 289 N.E.2d 373. In *Ludwig Hommel & Co. v. Woodsfield* (1927), 115 Ohio St. 675, 155 N.E. 386, the court refers to the account under consideration as a mutual running account in which there is a presumption that all transactions between the parties are a part of that same account, and the balance due is considered to be on demand. Such mutual dealing over a period of time is basically contractual.

{¶ 4} If an action on an account is founded in contract, plaintiff must first show the existence of a contract. " 'A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing.' " *Barlay v. Yoga's Drive Thru*, 10th Dist. No. 03AP–545, 2003-Ohio-7164, 2003 WL 23024481, ¶ 5, quoting *Lawler v. Burt* (1857), 7 Ohio St. 340, 349. In order to prove the existence of a contract, " 'a plaintiff must show that both parties consented to the terms of the contract, that there was a "meeting of the minds" of both parties, and that the terms of the contract are definite and certain.' " Id. at ¶ 6, quoting *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303. Therefore, this court will determine whether a contract existed between plaintiff and defendants.

{¶ 5} Defendants dispute that they owe plaintiff the amount claimed. Defendants argue that the $1,494.40 claimed exceeds the maximum total estimate the plaintiff gave to defendants prior to providing the veterinary services. Defendants signed a services estimate and client authorization for treatment with plaintiff on May 9, 2005 ("Estimate and Authorization"). Box A of the Estimate and Authorization, regarding primary specialty service, states: "Estimate $3,000 to $4,000." Box C of the estimate and authorization, regarding emergency department, states: "Estimate $450 to $525." Defendants have paid $4,500 to plaintiff, but refuse to pay the remaining $1,494.40 of plaintiff's claim.

{¶ 6} A valid contract consists of an offer, acceptance, and consideration. *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, 861 N.E.2d 605, ¶ 7, citing *Tersigni v. Gen. Tire, Inc.* (1993), 91 Ohio App.3d 757, 760, 633 N.E.2d 1140. A meeting of the minds as to the essential terms of the agreement is a requirement to enforcing the contract. *Motorists*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. The Tenth District Court of Appeals has held that " '[t]ypically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract.' " *L.B. Trucking Co., Inc. v. C.J. Mahan Constr. Co.*, 10th Dist. No. 01AP–1240, 2002-Ohio-4394, 2002 WL 1969645, ¶ 39, quoting *Dyno Constr. Co. v. McWane, Inc.* (C.A.6, 1999), 198 F.3d 567, 572. See, also, *TLG Electronics, Inc. v. Newcome Corp.* (Mar. 5, 2002), 10th Dist. No. 01AP–821, 2002 WL 338203. " 'However, a price quotation may suffice for an offer it is sufficiently detailed and it "reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract." ' " *L.B. Trucking* at ¶ 39, quoting *Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc., of Illinois* (N.D.Ill. 1986), 635 F.Supp. 1281, 1284.

{¶ 7} The court finds that the estimate, or price quotation, in the instant case did suffice as an offer and further finds that defendants assented and accepted the offer, thereby ripening the estimate into a contract. The court makes this finding considering the evidence presented at trial. First, the estimate and authorization contains several statements which lead this court to such conclusion. The name alone, "Services Estimate *and* Client *Authorization for Treatment*," supports that conclusion. The document is more than just an estimate, it is defendants' authorization for plaintiff to perform veterinary services. Several other clauses support the court's conclusion, including "The above is an estimate (a judgment as to the approximate cost) and could increase due to complications or unexpected conditions"; "Complications are a part of the risk in medical/surgical procedures, I understand that unforeseen complications may occur during the hospital stay or after discharge. These complications may increase my bill. I can receive billing updates as I receive updates on the condition of my pet, if so requested"; and "Additional days in the hospital will increase this estimate depending on the amount of care required. These fees start at a minimum of $150.00 per 24 hours for boarding, to an average of $250.00 to $325.00 for hospitalization, depending on the amount of care needed"; "The above statements have been explained to me and any questions have been answered. To the extent noted above, I hereby authorize the doctors on duty and assistants to administer treatment as is considered therapeutically and/or diagnostically necessary on the basis of their findings. I also consent to the administration of anesthetics and surgical intervention if necessary. I consent to

**40**

the release of medical information and authorize direct payment to MedVet Associates, Ltd. I assume responsibility for all charges and understand all balances are to be paid upon release of my pet." Defendant William Sebring signed the estimate and authorization.

{¶ 8} Defendants testified that in response to their question whether there would be any surprises as to cost, Dr. Mauer, an employee of plaintiff, told them "[N]o, depending on what we find." They also testified that Dr. Mauer assured defendants that it would be between $3,000 and $4,000 and would only cost more if the dog spent an extra day in the hospital. Defendants testified that they informed Dr. Mauer that they could not afford the treatment for their dog. Defendant Sherrie Sebring testified that she requested updates on Zoe's condition, but that no one called. She later testified that she consulted with Dr. Mauer, and Drs. Shertel and Kennedy called her after Zoe's surgeries as well as several technicians who cared for the dog 24 hours a day. The court notes that although defendants' attorney argued in her closing argument that defendants had requested billing updates, no verbal, documentary, or other evidence was presented that they did.

{¶ 9} Despite defendants' testimony that they were told the cost would not exceed $4,000, the written contract indicates otherwise. The Tenth District Court of Appeals has noted that "under the parol evidence rule, a court is not to utilize 'contemporaneous negotiations, understandings, promises, representations, or the like' when interpreting an unambiguous contract." *Gray Printing Co. v. Blushing Brides, L.L.C.*, 10th Dist. No. 05AP646, 2006-Ohio-1656, 2006 WL 832587, quoting *Busler v. D & H Mfg., Inc.* (1992), 81 Ohio App.3d 385, 390, 611 N.E.2d 352. The court finds the estimate and authorization to be unambiguous and therefore will not consider parol evidence to interpret the contract. The court further finds that plaintiff and defendants came to a meeting of the minds and both agreed that the final cost could exceed the estimate given.

{¶ 10} Exceeding or coming in under a given estimate is not an uncommon result. The nature of an estimate leads to such result. "[A]n estimate is, by definition, an approximation, prepared in advance of the actual work." *Mack v. Patterson* (July 19, 2001), 8th Dist. No. 78408, 2001 WL 824410. In a municipal construction case, one Ohio court held "Webster defines the noun 'estimate' as follows: 'A valuing or rating especially from incomplete data; A rough or approximate calculation.' * * * [T]he estimate doubtless, is merely an approximate calculation to give the property owner an idea of what the improvement is going to cost. * * * [W]e are not without abundant authority throughout the United States holding as we do that, where the statute law does not prohibit the letting of contracts for street improvements at a cost in excess of the preliminary estimate, the fact that the actual cost exceeds such estimate does not invalidate

the contract. \* \* \* Being advisory only, it can not, by reason of its being a poor or inaccurate estimate, render invalid an assessment." *McDonald v. Hornberger* (1918), 29 Ohio Dec. 268. The facts in the case at bar are different from the *McDonald* case in that *McDonald* involved a municipal construction contract, whereas the instant case involved veterinary services. Nevertheless, the legal theory applies regardless of the nature of the contract.

{¶ 11} Plaintiff presented sufficient evidence to prove that complications arose which justified the additional costs exceeding the original estimate. Zoe was hit by a car and her local veterinarian was not able to treat her appropriately. Dr. Kennedy testified that when she arrived at plaintiff's offices, Zoe was not stable and was in shock, and she almost died. Plaintiff stabilized her twice and gave her red blood cells throughout the evening. Plaintiff had to surgically repair Zoe's abdominal wall and then performed orthopedic surgery to repair her pelvis and femur. Dr. Kennedy testified that the instability from shock and the blood loss from the wound were two complications which arose during plaintiff's treatment of Zoe. Four veterinarians and 25 technicians treated Zoe. Plaintiff's medical records on Zoe indicate that Dr. Mauer was concerned that damage to the abdominal wall/contents could be hidden by abdominal skin. His notes further indicate "[p]otential complications, other than incontinence include infection, ongoing necrosis, wound healing etc."

{¶ 12} Therefore, based on the evidence presented, the court enters judgment for the plaintiff against defendants in the amount of $1,494.40, plus interest from the date of judgment, and costs.

So ordered.