[Cite as *Reinhart v. Fostoria Plumbing, Heating & Elec. Supply, Inc.*, 2010-Ohio-4825.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STEVEN J. REINHART,

    PLAINTIFF-APPELLEE,

  v.

FOSTORIA PLUMBING, HEATING &
ELECTRICAL SUPPLY, INC.,

    DEFENDANT-APPELLANT,

  and

MICHAEL T. REINHART, et al.,

    DEFENDANTS-APPELLEES.

CASE NO. 13-10-08

O P I N I O N

Appeal from Fostoria Municipal Court
Trial Court No. CVF0900438

**Judgment Affirmed**

**Date of Decision:  October 4, 2010**

**APPEARANCES:**

    *Kurt A. Dauterman,* **for Appellant**

    *Timothy J. Hoover,* **for Appellee Steven J. Reinhart**

**PRESTON, J.**

{¶1} Defendant-appellant, Fostoria Plumbing, Heating & Electrical Supply, Inc. (hereinafter "FPH&E"), appeals the judgment of the Fostoria Municipal Court finding FPH&E in breach of contract. For the reasons that follow, we affirm.

{¶2} This case concerns a promissory note executed by FPH&E, on or about May 9, 2005, by and through its presidents, Michael T. Reinhart and Margaret J. Warner, in favor of plaintiff-appellee, Steven J. Reinhart (hereinafter "Reinhart"). The general facts of this case are largely not in dispute. FPH&E is a closely-held corporation, which at one point in time was owned by Reinhart's parents. When Reinhart's parents died, their shares in the company were transferred and divided equally among their ten children, which included Reinhart. Subsequently, in 2005, Reinhart expressed his desire to have FPH&E buy back his shares. Thus, on or about May 9, 2005, FPH&E, by and through its presidents, Michael T. Reinhart and Margaret J. Warner, executed a promissory note for the purpose of buying back Reinhart's shares. (Plaintiff's Ex. A). The promissory note stated that FPH&E would pay Reinhart the sum of $85,044.18 over a period of four (4) years with interest at the rate of ten (10) percent. (Id.). Payments were to begin on June 3, 2005, and FPH&E was to make monthly payments of $1,771.25 plus interest on the third day of every month for forty-eight (48) months. (Id.). The note also indicated that it was secured by Reinhart's 55.556

shares of FPH&E. (Id.). Additionally, the parties executed a contract in which Reinhart promised to sell his shares (55.556) of the company back to FPH&E. (Defendant's Ex. 7).

{¶3} Thereafter, FPH&E made monthly payments under the promissory note to Reinhart. However, on April 3, 2009, FPH&E's president, Michael Reinhart, wrote a letter to Reinhart indicating that FPH&E would be unable to make the last three payments to Reinhart due to the economic downturn and asked him to be patient until the company was able to continue its payments. (Plaintiff's Ex. B). FPH&E never made its last three payments to Reinhart.

{¶4} On June 5, 2009, Reinhart filed a complaint, pro se, with the Fostoria Municipal Court seeking monetary damages for breach of a promissory note against FPH&E, Michael Reinhart, and Margaret Warner. FPH&E filed its answer on July 9, 2009. Thereafter, on September 30, 2009, the matter came on for a pre-trial conference, wherein a Civil Pre-Trial Order was issued granting FPH&E leave to file a counterclaim/amended answer by October 8, 2009. In addition, the trial court scheduled a trial on the matter for January 15, 2010. FPH&E failed to timely file a counterclaim or amended answer, but on January 8, 2010, FPH&E filed a request for leave to file a counterclaim, which was opposed by Reinhart. The trial court denied FPH&E's motion for leave to file a counterclaim pursuant to its pre-trial order dated September 30, 2009.

**{¶5}** Subsequently, a bench trial was held on January 15, 2010. At trial, Reinhart testified that he never received the last three payments under the terms of his promissory note with FPH&E. (Jan. 15, 2010 Tr. at 14-17). As a result, he claimed that he was owed a total amount of $5,403.85 plus interest. (Id. at 17). In response, FPH&E's president, Michael Reinhart, admitted that the company never made the last three payments under the note. (Id. at 57). However, FPH&E claimed that it had not actually breached the promissory note because there had been a mutual mistake of fact with regard to the number of shares Reinhart owned. (Id. at 60, 64-66). Specifically, FPH&E claimed that Reinhart only owned 50 shares of the company, not 55.556 shares; and so, FPH&E claimed that not only did it not breach the promissory note, but it had actually overpaid Reinhart for his shares. As a result, FPH&E asked the trial court to reform the promissory note and find that it did not breach the terms of the promissory note. After the presentation of evidence, the trial court granted Reinhart until January 28, 2010 to file a written closing argument and FPH&E until February 15, 2010 to file its written closing argument. FPH&E failed to timely file a written closing argument.

**{¶6}** Subsequently, on February 23, 2010, the Fostoria Municipal Court filed its judgment entry and made the following findings: (1) that FPH&E had breached its promissory note dated May 9, 2005; (2) that Defendants, Michael T. Reinhart and Margaret L. Warner, were not liable in their individual capacity for

the breach of the promissory note; and (3) that Defendants had failed to prove the defense of mutual mistake.

{¶7} FPH&E now appeals and raises the following two assignments of error. For ease of our discussion we elect to address its second assignment of error first.

## ASSIGNMENT OF ERROR NO. II

### THE TRIAL COURT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE A COUNTERCLAIM.

{¶8} In its second assignment of error, FPH&E claims that the trial court erred when it denied its motion for leave to file a counterclaim.

{¶9} It is within the trial court's discretion to grant or deny leave to amend, and this Court will not reverse the trial court's decision absent an abuse of discretion. *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261. See, also, *Hissong v. McNerney*, 3d Dist. No. 2-02-17, 2003-Ohio-4020, ¶8. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶130 (citations omitted). See, also, *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶10} When a defending party fails to assert a counterclaim in its initial pleading, the Civil Rules allow the party to assert the counterclaim by amendment,

"[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Civ.R. 13(F). Accordingly, Civ.R. 15(A), which governs amendment of pleadings, states that "[l]eave of court shall be freely given when justice so requires." Courts have interpreted this provision liberally to mean that "'a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party.'" *L.E. Sommer Kidron, Inc. v. Kohler*, 9th Dist. No. 06CA0044, 2007-Ohio-885, ¶35, quoting *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 5-6, 465 N.E.2d 377. However, "[a] party may be prejudiced when an opposing party seeks to assert defenses at a time when the party could not adequately prepare to litigate them." *Natl. City Mtge. v. Skipper*, 9th Dist. No. 24772, 2009-Ohio-5940, ¶7, citing *L.E. Sommer Kidron, Inc.*, 2007-Ohio-885, at ¶36, citing *St. Mary's v. Dayton Power & Light Co.* (1992), 79 Ohio App.3d 526, 607 N.E.2d 881. Furthermore, "'where a motion for leave to amend is not timely tendered and no reason is apparent to justify the delay, a trial court does not abuse its discretion in refusing to allow the amendment.'" *Am. Contractor's Indemn. Co. v. Nicole Gas Production, Ltd.*, 10th Dist. No. 07AP-1039, 2008-Ohio-5056, ¶21, quoting *State ex rel. Smith v. Adult Parole Auth.* (1991), 61 Ohio St.3d 602, 603-04, 575 N.E.2d 840, quoting *Meadors v. Zaring Co.* (1987), 38 Ohio App.3d 97, 99, 526 N.E.2d 107.

**{¶11}** Here, on September 30, 2009, the trial court issued a pre-trial order explicitly detailing the applicable dates for the remainder of the case. (Pre-trial Order, Doc. No. 12). In particular, the trial court scheduled the trial for January 15, 2010, and set FPH&E's deadline to file a motion for leave to file a counterclaim for October 8, 2009. (Id.). Despite this deadline, FPH&E failed to file a motion for leave to file a counterclaim on October 8, 2009. Instead, FPH&E filed its motion for leave to file a counterclaim on January 8, 2010, just seven days before the date of trial. (Motion for Leave to file Counterclaim, Doc. No. 14). In its memorandum, FPH&E claimed that its failure to file a counterclaim by October 8, 2009 had been an "oversight." (Id.). Moreover, FPH&E claimed that because it had told opposing counsel of its intentions back in September of filing a counterclaim, Reinhart would not suffer any prejudice from it filing a motion in January. (Id.). Despite FPH&E's arguments, the trial court denied the motion finding that the motion was not timely, citing its pre-trial order dated September 30, 2009. (Jan. 8, 2010 JE, Doc. No. 17).

**{¶12}** Based on the above, we believe that the trial court did not abuse its discretion in denying FPH&E's motion for leave to file a counterclaim because FPH&E's motion was untimely. FPH&E had been given an ample amount of time by the trial court to file a counterclaim. Not only did it fail to file a motion for leave by the requested due date, but when it did file its motion for leave it was *three months after* the deadline and just *seven days before* trial. Furthermore,

FPH&E's general "oversight" explanation does not sufficiently offer a clear justification for its delay, and there is nothing additional in the record that would support allowing the motion in the interest of justice. Therefore, we find that the trial court did not abuse its discretion when it overruled FPH&E's motion for leave to file a counterclaim.

{¶13} FPH&E's second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. I

**PLAINTIFF STEVEN REINHART DID NOT OWN THE NUMBER OF SHARES HE REPRESENTED AND OR AGREED TO SELL AT $1,771.75 PER SHARE, THUS AS A RESULT OF MUTUAL MISTAKE, THE COURT SHOULD HAVE REFORMED THE WRITTEN PURCHASE AGREEMENT AND OR PROMISSORY NOTE.**

{¶14} In its first assignment of error, FPH&E argues that the trial court should have reformed the promissory note because there was a mutual mistake regarding the promissory note. Based on FPH&E's arguments in its appellate brief, FPH&E essentially claims that the trial court's finding that it failed to prove a mutual mistake of fact was against the manifest weight of the evidence.

{¶15} "'[J]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Knipp v. Sadler*, 3d Dist. No. 6-09-04, 2009-Ohio-4444, ¶7, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus. See, also, *State v.*

*Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶24 (describing the civil manifest weight standard of review).

{¶16} Promissory notes are considered contracts as a matter of law. *Davidson v. Davidson*, 3d Dist. No. 17-05-12, 2005-Ohio-6414, ¶10. With regard to reviewing the language of any contract, "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. "'The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id., quoting *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. Moreover, when interpreting a contract, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus, superseded by statute on other grounds.

{¶17} Nevertheless, generally a court may not rewrite an agreement simply because it believes the agreement could have or should have been written more fairly. *Davidson*, 2005-Ohio-6414, at ¶11. "'The only grounds for reformation of

- 9 -

a written instrument are fraud and mutual mistake.'" *Continental Tire N. Am. v. Titan Tire*, 6th Dist. No. WM-09-010, 2010-Ohio-1355, ¶34, citing *Baltimore & O.R. Co. v. Bing* (1913), 89 Ohio St. 92, 105 N.E. 142. Here, FPH&E only raised an allegation of mutual mistake.

{¶18} The mutual mistake rule is applicable in situations where the parties are mistaken as to a vital existing fact at the time of contracting. *Hikmet v. Turkoglu*, 10th Dist. No. 08AP-1021, 2009-Ohio-6477, ¶58, citing *Motorist Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, 861 N.E.2d 605, ¶10, citing *Mollenkopf v. Weller*, 10th Dist. No. 03AP-1267, 2004-Ohio-5539. In these situations, a court may only reform a contract on the basis of mutual mistake when the instrument does not reflect the actual intention of the parties. *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, ¶13. Thus, the purpose of reforming a contract is to cause an agreement to express the actual intent of the parties. *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 209 N.E.2d 194. However, reformation may be accomplished only by showing by clear and convincing evidence that the mistake regarding the instrument was mutual. *Patton v. Ditmyer*, 4th Dist. Nos. 05CA12, 05CA21, 05CA22, 2006-Ohio-7107, ¶28, citing *Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797, paragraph one of the syllabus.

{¶19} After reviewing the record, we believe that FPH&E failed to prove by clear and convincing evidence that there was a mutual mistake of fact regarding

the number of shares owned by Reinhart. Thus, the trial court's judgment for Reinhart was not against the manifest weight of the evidence.

{¶20} The evidence in the record is not clear as to whether there was in fact a mutual mistake regarding the number of shares owned by Reinhart at the time of the promissory note. First of all, it is not clear from the testimony or the evidence presented at trial how the mistake regarding Reinhart's number of shares was relevant to the amount of money he was owed under the promissory note. Second, the evidence is not clear as to how many shares Reinhart actually owned and what percentage of ownership he had in the company when he was bought out.

{¶21} More importantly, when there has been a mutual mistake, the contract is voidable by the adversely affected party only if that party did not bear the risk of the mistake. *Motorists Mut. Ins.*, 2006-Ohio-5090, at ¶11, citing *Mollenkopf*, 2004-Ohio-5539, at ¶15, citing Restatement, Mistake, Section 154. Typically, a party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties; (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient; or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. *Motorists Mut. Ins.*, 2006-Ohio-5090, at ¶11, citing *Mollenkopf*, 2004-Ohio-5539, at ¶15, citing Restatement, Mistake, Section 154. Here, we believe that under the

circumstances it was reasonable for FPH&E to bear the risk of the mistake in the promissory note.

**{¶22}** Both sides acknowledged that FPH&E was the party that drafted all of the legal documents pertaining to the sale of Reinhart's shares, and as such, it was responsible for investigating and listing the appropriate number of shares owned by Reinhart. (Jan. 15, 2010 Tr. at 49, 54-55). In each of the legal documents, including the promissory note at issue here, FPH&E indicated that Reinhart owned 55.556 shares in the company, despite the fact that it claimed he only owned 50 shares at trial. (Plaintiff's Ex. A); (Defendant's Ex. 7). Given the fact that Reinhart allegedly only signed over two stock certificates worth in total 50 shares around the date of the promissory note, FPH&E should have known that he only had 50 shares and not 55.556 shares. (Defendant's Exs. 3 & 4). Nevertheless, FPH&E failed to notice the discrepancy at the time it executed the promissory note and contract. Rather, FPH&E continuously paid Reinhart pursuant to the terms of the promissory note up until the last three monthly payments, and it acknowledged that it would have completely paid off Reinhart but for economic downturn of the company. (Jan. 15, 2010 Tr. at 57, 73-74). FPH&E even sent Reinhart a letter acknowledging its inability to pay Reinhart the remainder due on the note. (Plaintiff's Ex. B). In fact, it was not until after Reinhart had filed his complaint against FPH&E when it finally discovered the

alleged mistake, which was also sometime after it had filed its answer in the matter. (Jan. 15, 2010 Tr. at 72).

**{¶23}** Thus, even if there had been a mistake as to how many shares Reinhart owned at the time the parties executed the promissory note, given the circumstances of this case, we find that it was reasonable for FPH&E to bear the risk of that mistake. See *Motorists Mut. Ins.*, 2006-Ohio-5090, at ¶¶11-17. Therefore, we find that the trial court's judgment in favor of Reinhart was not against the manifest weight of the evidence.

**{¶24}** FPH&E's first assignment of error is, therefore, overruled.

**{¶25}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jnc**